**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Meaghan Skillman, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| The Laundress, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Meaghan Skillman (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.    This action seeks to remedy the deceptive and misleading business practices of The Laundress, LLC (hereinafter "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's cleaning products (hereinafter the "Products")[1] throughout the state of New York, Florida, and throughout the country.

2.    Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on

---

[1] The Products include, but are not limited to, All Purpose Bleach Alternative & Cleaning, All Purpose Cleaning Concentrate, Aromatherapy Associates Support Breathe Dish Detergent, Aromatherapy Associates Support Breathe Surface Cleaner, Baby Detergent, Delicate Lady Wash, Dish Detergent, Fabric Conditioner Baby, Fresh Wash Signature Detergent, Glass & Mirror Cleaner, Home Cleaning Starter Kit, Kitchen Clean Duo, Pet Mess Kit, Signature Detergent & Fabric Conditioner, Stain Removal Essentials, Surface Cleaner, Whites Detergent, Wool & Cashmere Shampoo & Wool & Cashmere Spray.

its packaging that consumption of the Products may increase the risk of contracting invasive infections.

3.    As described in further detail below, the Products contain *Pseudomonas aeruginosa*, which could lead to serious and life-threatening adverse health consequences.[2]  The risk of serious infection is also particularly concerning for immunocompromised individuals that are highly susceptible to life threatening diseases and even death from *Pseudomonas aeruginosa* ingestion.[3]  This is egregious, especially because people are spreading this bacteria all over their homes by using a product that is supposed to clean their home.

4.    Defendant specifically lists both the active and inactive ingredients of the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Pseudomonas aeruginosa*.

5.    Defendant's products, which lack disclosure that the Products contain, or are at the risk of containing *Pseudomonas aeruginosa,* are listed below:

- #723 Detergent 16 fl oz
- #723 Detergent 2 oz
- #723 Detergent 8 fl oz
- #723 Fabric Conditioner 16 fl oz
- 723 Collection
- 723 Detergent and Conditioner Duo
- 723 Detergent Bulk (6 units)
- 723 Gift Set Detergent and Conditioner Boxed Gift Set
- 723 Gift Set Detergent and Fabric Fresh Boxed Gift Set
- All Purpose Bleach Alternative & Cleaning Concentrate Duo
- All Purpose Bleach Alternative Packet
- All Purpose Cleaning Concentrate 2oz
- All Purpose Cleaning Concentrate 16 fl oz
- All Purpose Cleaning Concentrate 16 fl oz with Glass Bottle
- All Purpose Cleaning Concentrate Duo

---

[2] *Pseudomonas aeruginosa* is a gram-negative bacterium that causes infections in the blood and lungs and is associated with inhalation and skin ingestion, *see*: https://www.cdc.gov/hai/organisms/pseudomonas.html; *see also* Minh Tam Tran Thi, et al., *Pseudomonas aeruginosa Biofilms*, Int. J. Mol. Sci., 2020 Nov; 21 (22): 8671, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7698413/.
[3] *Id.*

- Aromatherapy Associates Deep Relax & Forest Therapy Boxed Gift Set
- Aromatherapy Associates Deep Relax Signature Detergent 16 fl oz
- Aromatherapy Associates Forest Therapy Signature Detergent 16 fl oz
- Aromatherapy Associates Full Collection
- Aromatherapy Associates Support Breathe Dish Detergent 16 fl oz
- Aromatherapy Associates Support Breathe Surface Cleaner & Dish Detergent Duo
- Aromatherapy Associates Support Breathe Surface Cleaner 16 fl oz
- Artisan Detergent 16 oz
- Artisan Detergent 2 oz
- Artisan Detergent 8 oz
- Artisan Detergent and Candle Boxed Gift Set
- Baby Detergent & Fabric Conditioner Duo
- Baby Detergent & Fabric Fresh Duo
- Baby Detergent 2 oz
- Baby Detergent 32 fl oz
- Baby Detergent Duo
- Baby Detergent Gallon
- Baby Detergent Packet
- Baby Detergent Unscented 32 fl oz
- Best Sellers Kit
- Brighten Up Duo
- Clean Break Kit
- Clean Clutch
- Clean Collar Duo
- Darks Detergent & Fabric Conditioner Duo
- Darks Detergent & Fabric Fresh Duo
- Darks Detergent 32 fl oz
- Darks Detergent Bulk (6 Units)
- Darks Detergent Duo
- Delicate Kit
- Delicate Kit Holiday Edition
- Delicate Lady Wash 16 fl oz
- Delicate Lady Wash 2 fl oz
- Delicate Lady Wash 8 fl oz
- Delicate Lady Wash Packet
- Delicate Wash & Mesh Washing Bag Duo
- Delicate Wash & Spray Duo
- Delicate Wash Bulk (6 Units)
- Delicate Wash Duo
- Denim Gift Bag
- Denim Kit
- Denim Wash & Fabric Fresh Classic Duo
- Denim Wash 16 fl oz
- Denim Wash 2 fl oz
- Denim Wash Bulk (6 Units)
- Denim Wash Packet

- Dish Detergent - Flexpack 64 oz.
- Dish Detergent 16 fl oz
- Dish Detergent 8 fl oz
- Dish Detergent Bulk (6 Units)
- Dish Detergent Duo
- Dish Detergent Flex Pack with 16 oz Glass Pump
- Dry Clean On-The-Go Kit
- Dry Cleaning Detox Kit
- Dry Cleaning Detox Kit Holiday Edition
- Everyday Laundry Kit
- Fabric Conditioner Baby 16 fl oz
- Fabric Conditioner Baby 2 fl oz
- Fabric Conditioner Baby Duo
- Fabric Conditioner Baby Packet
- Fabric Conditioner Bulk (6 units)
- Fabric Conditioner Classic 16 fl oz
- Fabric Conditioner Classic Duo
- Fabric Conditioner Classic Paquette
- Fabric Conditioner- Baby Bulk (6 Units)
- Fresh Wash Fabric Conditioner 16 fl oz
- Fresh Wash Signature Detergent 32 fl oz
- Gift Set Le Labo Rose and Le Labo Santal
- Glass & Mirror Cleaner 16 fl oz
- Glass & Mirror Cleaner 16 fl oz Bulk (6 units)
- Glass & Mirror Cleaner 8 fl oz
- Glass and Mirror Cleaner Duo
- Holiday Gift Kit 2022
- Holiday Make Messes
- Home Cleaning Best Seller Kit
- Home Cleaning Starter Kit
- Home Cleaning Starter Kit - Holiday 2022
- Isle Detergent 2 fl oz
- Isle Detergent 32 fl oz
- Isle Signature Detergent 32 oz
- Isle Signature Detergent and Fabric Fresh
- Jenni Kayne Signature Detergent 16 fl oz
- John Mayer Out West Detergent 16 fl oz
- John Mayer Out West Detergent 2 fl oz
- John Mayer Out West Detergent and Fabric Fresh Boxed Gift Set
- John Mayer Out West Detergent and Fabric Fresh Duo
- John Mayer Way Out West Detergent 16 fl oz
- John Mayer Way Out West 2 fl oz
- John Mayer Way Out West Detergent and Fabric Fresh Duo
- Kitchen Clean Duo
- Kith Signature Detergent 16 fl oz
- Kith Signature Detergent 2oz

- Laundry Essentials Pack
- Laundry Starter Kit - Holiday 2022
- Le Labo Rose 31 Packet
- Le Labo Rose and Le Labo Santal Duo
- Le Labo Rose Signature Detergent 16 fl oz
- Le Labo Rose Signature Detergent 2 fl oz
- Le Labo Santal 33 Packet
- Le Labo Santal Signature Detergent 16 fl oz
- Little Laundress Kit
- Make Messes Kit
- Mini Dry Clean Kit with Holiday Bar
- New Parent Kit
- Number 10 Detergent 16 fl oz
- Number 10 Detergent 2 oz
- Number 10 Detergent and Conditioner Boxed Gift Set
- Number 10 Detergent Packet
- Number 10 Fabric Conditioner 16 fl oz
- Number 10 Gift Set Detergent and Conditioner Duo
- Number 10 Kit
- On the Spot Holiday Edition
- On The Spot Kit
- Pet Mess Kit
- Scent Discovery Kit
- Scented Vinegar & Dish Detergent Duo
- Seasonal Whites Detergent and Fabric Conditioner Duo
- Signature Detergent & Fabric Conditioner Duo
- Signature Detergent 32 fl oz Bulk (6 Units)
- Signature Detergent Classic 2 fl oz
- Signature Detergent Classic 32oz
- Signature Detergent Classic 8 fl oz
- Signature Detergent Classic Gallon
- Signature Detergent Classic Packet
- Signature Detergent Classic- Flexpack 64 oz.
- Signature Detergent Duo
- Signature Detergent Flex Pack with 32 oz Signature
- Sport Detergent & Spray Duo
- Sport Detergent 16 fl oz
- Sport Detergent 2oz
- Sport Detergent Duo
- Sport Detergent Flexpack 64 oz.
- Sport Detergent Packet
- Sport Detergent Refill Duo
- Sport Kit
- Spotless Kit
- Spring Cleaning Bundle
- Stain Removal Essentials

- Stain Solution 16 fl oz
- Stain Solution 2 fl oz
- Stain Solution 8 fl oz
- Stain Solution Duo
- Stain Solution Packet
- Summer Fridays Detergent 16oz
- Summer Fridays Detergent 16oz
- Surface Cleaner - Flexpack 64 oz.
- Surface Cleaner 16 fl oz
- Surface Cleaner 8 fl oz
- Surface Cleaner Duo
- Surface Cleaner Flex Pack with 16 oz Glass Bottle
- The Laundress & Peruvian Connection Luxury Fibre Wash 16 oz
- The Laundress & Peruvian Connection Luxury Fibre Wash 2 oz
- The Laundress Starter Kit
- The Laundress Welcome Kit
- The Pit Kit
- The Skimm Laundry Bundle
- Today Show Bundle 2020
- Travel Pack
- Ultimate Stain Solving Kit
- Unscented Baby Detergent 32 oz
- Unscented/Fragrance-Free Detergent 16 fl oz
- Unscented/Fragrance-Free Detergent 32 fl oz
- Whites and Darks Duo
- Whites Detergent 32 fl oz
- Whites Detergent Duo
- Winter Travel Trio
- Wool & Cashmere Packet
- Wool & Cashmere Shampoo & Wool & Cashmere Spray Duo
- Wool & Cashmere Shampoo 16 fl oz
- Wool & Cashmere Shampoo 2 fl oz
- Wool & Cashmere Shampoo 8 fl oz
- Wool and Cashmere Kit

6.      A few of representative samples of Defendant's lack of disclosure on the products

are depicted below:

**The Laundress Delicate Wash**



**The Laundress Wool and Cashmere Shampoo**



7.     *Pseudomonas aeruginosa* is recognized to be an incredibly dangerous and life-threatening substance, specifically for immunocompromised individuals, and especially in the context of inhalation and skin ingestion.[4]

8.     Insofar as *Pseudomonas aeruginosa* made its way into Defendant's Products on purpose, it should have been listed on the Products labeling.   Insofar as it made its way into the Products by accident, it follows that it was due to poor manufacturing processes by either Defendant and/or their agents.   Further evidencing this fact, Defendant has published a Safety Notice on its website for consumers "to immediately stop using all The Laundress products."[5]   In conjunction, Consumer Reports has published a product safety article additionally highlighting the inherit risks of *Pseudomonas aeruginosa* contamination and growing on laundry and at high enough levels that could spread to susceptible persons via contaminated laundry contacts and/or inhalation that can lead to cystic fibrosis.[6]

9.     Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Pseudomonas aeruginosa*.

10.     Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the cleaning products they purchase will not contain, or risk containing, any knowingly harmful substances that are not disclosed.

11.     Unfortunately for consumers, like Plaintiff, the cleaning products they purchased contain *Pseudomonas aeruginosa*.

---

[4] *See* https://www.blf.org.uk/support-for-you/pseudomonas; *see also* https://www.webmd.com/a-to-z-guides/pseudomonas-infection.
[5] *See* https://www.thelaundress.com/pages/safety-notice.
[6] *See* https://www.consumerreports.org/product-safety/the-laundress-tells-consumers-to-stop-using-its-products-a1227857835/

12.     Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products include *Pseudomonas aeruginosa*.  This omission leads to a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Pseudomonas aeruginosa*.

13.     Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves.  As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe to touch and does not contain any harmful bacterium.  Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products.  Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Pseudomonas aeruginosa*.

14.     Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Pseudomonas aeruginosa*, which is dangerous to one's health, well-being, and even life.  Nevertheless, Defendant does not list or mention *Pseudomonas aeruginosa* anywhere on the Products' packaging or labeling.

15.     Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

16.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a cleaning product contaminated with a known bacterium that is harmful to consumers health, and lives, which is even more so true for immunocompromised individuals.

17.     That is because Defendant's Products containing, or at risk of containing, a known dangerous substance have no value.

18.     Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's health-conscious marketing and advertising campaign including its false and misleading representations and omission on the Products' labels.  Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

19.     Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§349 and 350 and Florida Stat. § 501.201.  Defendant also breached and continues to breach its warranties regarding the Products.

20.     Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

21.     Defendant manufactures, markets, advertises, and sells laundry and home cleaning products.  Specifically, the Products are used to "preserve clothing and deep clean every room."[7]

22.     Pursuant to Defendant's website, a large selection of cleaning products are offered for a plethora of fabric materials from A-Z, along with cleaning products to clean by appliance, surface, and or room through-out a customer's home.[8]  An example of these representations on the website is depicted below:

---

[7] https://www.pinterest.com/pin/ditch-the-dry-cleaner--196047390017598272/.
[8] https://www.thelaundress.com/pages/how-to.

## Wash by Fabric A-Z

A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

Acetate          Acrylic          Alpaca          Angora

## Cleaning House

Clean by Appliance                                                        ^

Clean by Surface                                                          ^

Clean by Room                                                            ^

23.     What is concerning is that many consumers, like Plaintiff and Class Members, use cleaning products, akin to the Products, now more than ever on a regular basis in their homes to disinfect and protect against bacteria and other harmful substances within the home.[9]

24.     Accordingly, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria conscious regarding the cleanliness of their homes.  With that in mind, the cleaning products market was valued at USD 33.8 billion in 2021 and is expected to grow with a compound annual growth rate of 4.9% from 2022 to 2028.[10]

25.     Consumers have become increasingly concerned about the effects of ingredients in products that they inhale and/or touch.  Companies such as Defendant have capitalized on

---

[9] https://www.statista.com/statistics/1104333/cleaning-product-sales-growth-from-coronavirus-us/.
[10] https://www.grandviewresearch.com/industry-analysis/household-cleaners-market-report#:~:text=Report%20Overview,4.9%25%20from%202022%20to%202028.

consumers' desire for cleaning products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

26.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Pseudomonas aeruginosa*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

27.    The Products' packaging does not identify *Pseudomonas aeruginosa*.  Indeed, *Pseudomonas aeruginosa* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential inclusion) of *Pseudomonas aeruginosa* in the Products.  This leads reasonable consumers to believe the Products do not contain and are not at risk of containing dangerous chemicals like *Pseudomonas aeruginosa*.

28.    However, despite the fact that the Products' labeling and ingredient listing, Defendant omits that the Products contains or is at risk of containing *Pseudomonas aeruginosa*.

29.    Specifically, Pseudomonas aeruginosa is a gram-negative bacterium that can survive on inanimate surfaces for months.[11]  Moreover, Pseudomonas aeruginosa can be transmitted through airborne exposure and skin-to-skin contact.[12]  Consequently, consumers, like Plaintiff and Class Members, are at risk by using Defendant's Products as the Products are used to clean surfaces, which allows Pseudomonas aeruginosa to infect individuals by either being in close proximity to the applied surface or by touching the applied surface.

---

[11] Axel Kramer, *How long do nosocomial pathogens persist on inanimate surfaces? A systematic review*, BMC Infect Dis., 2006; 6:130, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1564025/

[12] S. Sudharsanam, *Airbone Pseudomonas species in Healthcare Facilities in a Tropical Setting*, Curr Health Sci J., 2015 Apr-Jun; 41(2): 95-103, accessible at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6201198/; *see also* https://www.endosan.com/pseudomonas-aeruginosa-causes-symptoms-transmission-and-infection-prevention/.

30.     Moreover, twenty-first century research has confirmed that *Pseudomonas aeruginosa* inhalation and exposure can cause death to immunocompromised individuals.[13]

31.     This is why *Pseudomonas aeruginosa* in Defendant's Products is particularly concerning, as also evidenced by Defendant publishing a Safety Notice on its website imploring consumers "to stop using all The Laundress Products."[14]

32.     Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing cleaning products for many years, including producing and manufacturing the Products.

33.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Pseudomonas aeruginosa* contamination.

34.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products.  Such knowledge is not readily available to consumers like Plaintiff and Class Members.

35.     Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

36.     Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Pseudomonas aeruginosa* is likely to continue to deceive and mislead

---

[13] Yohei Migiyami, et al., *Pseudomonas aeruginosa Bacteremia among Immunocompetent and Immunocompromised Patients: Relation to Initial Antibiotic Therapy and Survival*, Jpn J Infect. Dis., 2016; 69(2):91-6, accessible at: https://pubmed.ncbi.nlm.nih.gov/26073727/.
[14] See https://www.thelaundress.com/pages/safety-notice

reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

37.    Defendant's misrepresentation and omission was material and intentional because people are concerned with what is in the products that they inhale and touch.  Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients.  Defendant knows that if they had not omitted that the Products contained *Pseudomonas aeruginosa*, then Plaintiff and the Class would not have purchased the Products at all.

38.    Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

39.    Consumers rely on marketing and information in making purchasing decisions.

40.    By omitting that the Products include *Pseudomonas aeruginosa* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase cleaning materials with a harmful bacterium.

41.    Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

42.    Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

43.    Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

44.    In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed as having the ability to clean without the bacterium *Pseudomonas aeruginosa* over comparable products not so marketed.

45.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

    a.    Paid a sum of money for Products that were not what Defendant represented;

    b.    Paid a premium price for Products that were not what Defendant represented;

    c.    Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted; and

    d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

46.    Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

47.     Plaintiff and the Class Members paid for Products that do not contain *Pseudomonas aeruginosa*.  Since the Products do indeed contain *Pseudomonas aeruginosa*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

48.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

49.     Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon.  Had Plaintiff and Class Members known the truth about the Products, i.e., that it contains a harmful bacterium (i.e. *Pseudomonas aeruginosa*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

## JURISDICTION AND VENUE

50.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Florida and Defendant The Laundress, LLC is a citizen of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs. Upon information and belief, Defendant's managers and headquarters are in New York, New York, thus, Plaintiff is a citizen of a state different from all members of Defendant.  Further, under

CAFA, Defendant's citizenship is based on its principal place of business, which is in New York, New York, thus Plaintiff is a citizen of a state different from costs.

51.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

52.    Venue is proper because Defendant and many Class Members reside in the Southern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

**PARTIES**

**Plaintiff**

53.    Plaintiff Meaghan Skillman is a citizen and resident of Bradenton, Florida.  During the applicable statute of limitations period, Plaintiff purchased Defendant's Delicate Wash and Wool & Cashmere Shampoo Products that are subject to the Safety Notice on Defendant's website.

54.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worthless because they contain the known harmful substance, *Pseudomonas aeruginosa*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions.  Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

55.     Defendant, The Laundress, LLC is a Delaware LLC with its principal place of business in New York, New York.

56.     Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

57.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution.

58.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

59.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the states of New York and Florida at any time during the Class Period (the "New York Subclass" and the "Florida Subclass").

60.     The Class, New York Subclass, and Florida Subclass shall be referred to collectively throughout the Complaint as the Class.

61.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

62.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New

York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

63.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

  a.    Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

  b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

  c.    Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

  d.    Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

  e.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

64.    <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

65.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims

are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

66. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

67. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

      a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

      b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

      c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

      d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

21

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

68.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

69.   Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

71.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

72.    There is no adequate remedy at law.

73.    Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

74.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Pseudomonas aeruginosa*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendant's Products and to use the Products when they otherwise would not have.  Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

75.    Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

76.    Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

77.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

78.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

79.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

80.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

81.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

82.     Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Pseudomonas aeruginosa*.

83.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled,

unhealthy, and entirely worthless.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

84.     Defendant's advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

85.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

86.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

87.     Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

88.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

89.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of Plaintiff and the Florida Class)**

90.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

91.     Plaintiff brings this claim on behalf of herself and the Florida Class against Defendant.

92.     Plaintiff and members of the Florida Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

93.     Defendant engaged in "trade or commerce" within the meaning of Fla. Stat.§ 501.203(8).

94.     FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ."

95.     Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

96.     In the course of their business, Defendant violated the FUDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the safety of their cleaning products as detailed above.

97.     Specifically, by misrepresenting the cleaning products as safe and by failing to disclose and actively concealing the dangers and risk posed by the cleaning products, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

98.     Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Florida Class Members, about the true safety and quality of the cleaning products, and the true value of the cleaning products.

99.     Defendant's scheme and concealment of the cleaning products being unsafe and

true characteristics of the cleaning products were material to Plaintiff and Florida Class

members, as the Defendant intended.  Had they known the truth, Plaintiff and Florida Class

members would not have purchased the cleaning products, or would have paid significantly less

for them.

100.    Plaintiff and Florida Class members had no way of discerning that

Defendant's representations were false and misleading and/or otherwise learning the facts that

Defendant had concealed or failed to disclose.  Plaintiff and Florida Class Members did

not, and could not, unravel Defendant's deception on their own.

101.    Defendant had an ongoing duty to Plaintiff and Florida Class Members to

refrain from unfair or deceptive practices under the FUDTPA in the course of their business.

Specifically, Defendant owed Plaintiff and Florida Class Members a duty to disclose all

the material facts concerning the cleaning products because they possessed exclusive knowledge,

they intentionally concealed the defect from Plaintiff and Florida Class Members, and/or they

made misrepresentations that were misleading because they were contradicted by withheld facts.

102.    Defendant's violations present a continuing risk to Plaintiff and Florida State

Class members, as well as to the general public. Defendant's unlawful acts and practices

complained of herein affect the public interest.

103.    Pursuant to Fla. Stat. § 501.211, Plaintiff and Florida Class Members seek

an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and

any other just and proper relief available under the FUDTPA.

104.    Plaintiff and the Florida Class suffered ascertainable loss and actual

damages as a direct and proximate result of Defendant's misrepresentations and concealment of

and failure to disclose material information.

105.    Plaintiff and the Florida Class are entitled to recover their actual damages

under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

106.    Plaintiff and the Florida Class also seek an order enjoining Defendant's

unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just

and proper relief available under the FUDTPA.

### FOURTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### Fla. Stat. §§ 672.313 and 680.21
### (On Behalf of Plaintiff and the Florida Class)

107.    Plaintiff realleges and incorporates by reference all preceding allegations as

though fully set forth herein.

108.    Plaintiff brings this claim on behalf of herself and the Florida Class against

Defendant.

109.    Defendant is and was at all relevant times "merchant[s]" with respect to cleaning

products under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of cleaning products

under § 672.103(1)(d).

110.    All Florida Class Members who purchased cleaning products in Florida are

"buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

111.    The cleaning products are and were at all relevant times "goods" within the

meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

112.    Defendant's warranties formed the basis of the bargain that was reached when

Plaintiff and Florida Class Members unknowingly purchased cleaning products that

contained bacteria.

113.    However, Defendant knew or should have known that the warranties were false

and/or misleading.  Specifically, Defendant was aware of the bacteria in the cleaning products,
which were dangerous at the time that they were sold to Plaintiff and Florida Class Members.

114.    Plaintiff and Florida Class Members reasonably relied on the Defendant's
express warranties when purchasing the cleaning products.

115.    Defendant knowingly breached their express warranties to sell cleaning products
that did not contain bacteria in materials and workmanship by failing to inform Plaintiff and
Class Members of the bacteria being within the cleaning products.

116.    Defendant also breached its express warranties by providing a product containing
bacteria that was never disclosed to Plaintiff and Florida Class Members.

118. Alternatively, any opportunity to cure the breach is unnecessary and futile.

119. As a direct and proximate result of the Defendant's breach of express warranty,
Plaintiff and Florida Class Members have been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Fla. Stat. §§ 672.314 and 680.212**
**(On Behalf of Plaintiff and the Florida Class)**

120. Plaintiff realleges and incorporates by reference all preceding allegations as though
fully set forth herein.

121. Plaintiff brings this claim on behalf of herself and the Florida Class against
Defendant.

122. Defendant is and was at all relevant times a "merchant[s]" with respect to cleaning
products under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of cleaning products
under § 672.103(1)(d).

123. All Florida Members who purchased cleaning products in Florida are
"buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

124. The cleaning products are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

125. A warranty that the cleaning products were in merchantable condition and fit for the ordinary purpose for which cleaning products are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

126. The cleaning products did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which cleaning supplies were used. Specifically, the cleaning supplies contained bacteria rendering the cleaning supplies inherently defective and dangerous.

127. Alternatively, any opportunity to cure the breach is unnecessary and futile.

128. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Florida Class Members have been damaged in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

129. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

130. Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are safe for use and do not contain *Pseudomonas aeruginosa*.

131.    Defendant omitted that the Products contain a known bacterium from its ingredients labeling.  This omission would lead reasonable consumers did not contain a known bacterium, when in fact, the Products were contaminated with *Pseudomonas aeruginosa* as stated herein.

132.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

133.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff and Class Members' transactions.

134.    Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

135.    Defendant knowingly breached the express warranties by including *Pseudomonas aeruginosa* in the Products sold to Plaintiff and the Class without properly notifying them of their inclusion in the Products.

136.    Within a reasonable time after it knew or should have known, Defendant did not change the Products' label to include *Pseudomonas aeruginosa* in the ingredients list.

137.    Defendant thereby breached the following state warranty laws:

    a.    Code of Ala. § 7-2-313;

    b.    Alaska Stat. § 45.02.313;

    c.    A.R.S. § 47-2313;

    d.    A.C.A. § 4-2-313;

    e.    Cal. Comm. Code § 2313;

    f.    Colo. Rev. Stat. § 4-2-313;

    g.    Conn. Gen. Stat. § 42a-2-313;

h.    6 Del. C. § 2-313;

i.    D.C. Code § 28:2-313;

j.    Fla. Stat. § 672.313;

k.    O.C.G.A. § 11-2-313;

l.    H.R.S. § 490:2-313;

m.    Idaho Code § 28-2-313;

n.    810 I.L.C.S. 5/2-313;

o.    Ind. Code § 26-1-2-313;

p.    Iowa Code § 554.2313;

q.    K.S.A. § 84-2-313;

r.    K.R.S. § 355.2-313;

s.    11 M.R.S. § 2-313;

t.    Md. Commercial Law Code Ann. § 2-313;

u.    106 Mass. Gen. Laws Ann. § 2-313;

v.    M.C.L.S. § 440.2313;

w.    Minn. Stat. § 336.2-313;

x.    Miss. Code Ann. § 75-2-313;

y.    R.S. Mo. § 400.2-313;

z.    Mont. Code Anno. § 30-2-313;

aa.    Neb. Rev. Stat. § 2-313;

bb.    Nev. Rev. Stat. Ann. § 104.2313;

cc.    R.S.A. 382-A:2-313;

dd.    N.J. Stat. Ann. § 12A:2-313;

ee.    N.M. Stat. Ann. § 55-2-313;

ff.    N.Y. U.C.C. Law § 2-313;

gg.    N.C. Gen. Stat. § 25-2-313;

hh.    N.D. Cent. Code § 41-02-30;

ii.    II. O.R.C. Ann. § 1302.26;

jj.    12A Okl. St. § 2-313;

kk.    Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313; and

xx.    Wyo. Stat. § 34.1-2-313.

138.    As a direct and proximate result of Defendant's breach of the express warranties, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Pseudomonas aeruginosa*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: November 23, 2022

**THE SULTZER LAW GROUP P.C.**

By:     Jason P. Sultzer /s/

_____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

Nick Suciu III, Esq.
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary Klinger, Esq.
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com

*Counsel for Plaintiff and the Class*