**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEAGHAN SKILLMAN and SANDRA FORBUS, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-10008 (JMF) |
| | HONORABLE JESSE M. FURMAN |
| Plaintiffs, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| THE LAUNDRESS, LLC, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND STRIKE PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**WINSTON & STRAWN LLP**

Ronald Y. Rothstein (*pro hac vice*)
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Rebecca Loegering (*pro hac vice*)
2121 N. Pearl Street
Suite 900
Dallas, TX 75201
rloegering@winston.com
Telephone: (214) 453-6500
Facsimile: (214) 453-6400 (telecopy)

ATTORNEYS FOR DEFENDANT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................... 3

III.  LEGAL STANDARDS ............................................................................ 4

IV.  ARGUMENT ........................................................................................... 5

    A.    The Court may Consider Defendant's Safety Notice and the CPSC Recall ............ 5

    B.    Plaintiffs' Claims Are Moot ................................................................ 6

    C.    Plaintiffs' Claims Are Prudentially Moot. .............................................. 7

    D.    Plaintiffs Lack Standing Because They Have Not Alleged An Injury In Fact ....... 8

    E.    Plaintiffs Lack Standing to Seek Injunctive Relief ..................................... 9

    F.    Plaintiffs' Request for Medical Monitoring Protocol Fails. ............................. 10

    G.    Plaintiffs Fail to Allege that They Suffered any Damages. ............................. 10

    H.    Plaintiffs Fail to Allege An Actionable Misrepresentation .............................. 11

    I.    Plaintiff's GBL §§ 349 and 350 Claims Should Be Dismissed. ........................ 12

        1.    Plaintiffs Lack Statutory Standing Under GBL §§ 349 or 350 ................. 12

        2.    Plaintiffs' §§ 349 and 350 Claims Fail Because Plaintiffs Fail to Allege Defendant's Knowledge. ....................................................... 14

        3.    Plaintiffs Fail to Allege Proximate Causation. ................................. 14

        4.    Plaintiffs Fail to Allege Damages. ............................................... 15

        5.    Plaintiffs' Claim Under GBL § 350 Must be Dismissed Because Plaintiffs Fail to Allege Reliance. ................................................ 16

    J.    Plaintiffs Fail to State a Claim Under FDUTPA. ...................................... 16

        1.    Plaintiffs' FDUTPA Claim is Subject to Rule 9(b). ........................... 16

        2.    Plaintiffs Fail to Allege an Unfair or Deceptive Act. ......................... 17

        3.    Plaintiffs Fail to Allege Actual Damages. ...................................... 17

    K.    Plaintiff's Express Warranty Claims Fail as a Matter of Law. ........................ 17

        1.    Defendant Did not Make any Express Warranties ............................. 18

        2.    Plaintiffs Do Not Allege Breach. ............................................... 19

        3.    Plaintiffs Do Not Allege Knowledge or Proximate Causation. .............. 20

        4.    Plaintiffs Did Not Provide Notice or Opportunity to Cure. .................. 20

L.    Plaintiffs' Implied Warranty Claim Fails as a Matter of Law. ............................21

    1.    Plaintiffs Fail to Plead that they were in Privity with Defendant. ............21

    2.    Plaintiffs Fail to Plausibly Allege Injury. ...................................22

    3.    Plaintiffs Failed to Provide Notice............................................22

M.    Plaintiffs' Nationwide Express Warranty Claim is Improper.............................22

N.    The Court should Strike the Nationwide Class Allegations as Unmanageable..........................................................................23

O.    Plaintiffs Have Not Sufficiently Pleaded Entitlement to Punitive Damages.........25

V.    CONCLUSION ............................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armadillo Distribution Enterprises, Inc. v. Hai Yun Musical Instruments
   Manufacture Co. Ltd.*,
   142 F. Supp. 3d 1245 (M.D. Fla. 2015) .................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................5, 11, 21

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   2012 WL 2990766 (N.D. Cal. July 20, 2012) .........................................................18

*Axon v. Florida's Nat. Growers, Inc.*,
   813 Fed. Appx. 701 (2d Cir. 2020) ...................................................................19, 20

*Bechtel v. Fitness Equip. Servs.*,
   No. 339 F.R.D. 462 (S.D. Ohio 2021) ....................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................5

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
   959 F.3d 491 (2d Cir. 2020) ....................................................................................10

*Bland v. Abbott Labs., Inc.*,
   2012 WL 32577 (W.D. Ky. Jan. 6, 2012) ...............................................................11

*Berni v. Barilla S.p.A*,
   964 F.3d 141 (2d Cir. 2020) ....................................................................................10

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) .................................................................................24

*Caronia v. Philip Morris USA, Inc.*
   22 N.Y.3d 439 (N.Y. 2013) .....................................................................................10

*Castillo v. Unilever United States, Inc.*,
   No. 20 C 6786, 2022 WL 17976163 (N.D. Ill. Dec. 28, 2022) ...............................19

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
   No. 22-CV-02716-CM, 2022 WL 14061542 (S.D.N.Y. Oct. 24, 2022) ...................5

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998) .............................................................................22, 23

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)................................................................................................9

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)...............................................................................13

*Cummings v. FCA US LLC*,
401 F. Supp. 3d 288 (N.D.N.Y. 2019) ...................................................12, 15, 16

*Davenport v. Ford Motor Co.*,
2006 WL 2048308 (N.D. Ga. July 20, 2006)......................................................24

*Davis v. Avvo, Inc.*,
345 F. Supp. 3d 534 (S.D.N.Y. 2018).................................................................15

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)............................................................................5, 6

*Dopson-Troutt v. Novartis Pharm. Corp.*,
No. 8:06-CV-1708-T-24, 2014 WL 1418100 (M.D. Fla. Apr. 11, 2014)...............20

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
423 F. Supp. 2d 173 (S.D.N.Y. 2006)..................................................................6

*Elson v. Black*,
56 F.4th 1002 (5th Cir. 2023) .............................................................................24

*FastTrac Transp., LLC v. Pedigree Tech., LLC*,
2022 WL 3028048 (D.N.D. Aug 1, 2022) ............................................................24

*Fishon v. Peloton Interactive, Inc.*,
No. 19 Civ. 11711 (LJL), 2021 WL 2941820 (S.D.N.Y. July 12, 2021) .........13, 14

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997)............................................................................23

*Forsher v. J.M. Smucker Co.*,
No. 5:19CV00194, 2020 WL 1531160 (N.D. Ohio Mar. 31, 2020)................12, 24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000)............................................................................................5

*Gale v. Int'l Bus. Machs. Corp.*,
9 A.D.3d 446, 781 N.Y.S.2d 45 (2d Dept. 2004) .....................................12, 15, 16

*Garcia v. Clarins USA, Inc.*,
No. 14-CV-21249, 2014 WL 11997812 (S.D. Fla. Sept. 5, 2014) ........................21

*In re GE/CBPS Data Breach Litig.*,
   No. 20 CIV. 2903 (KPF), 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ...............................13

*In re: Gen. Motors LLC Ignition Switch Litig.*,
   No. 14-MC-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ...............................16

*In re: General Motors LLC Ignition Switch Litigation*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016).. ..........................................................................17

*Goshen v. Mut. Life Ins. Co. of New York*,
   98 N.Y.2d 314 (N.Y. Ct. App. 2002) ......................................................................................12

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) .......................................................................................22, 23

*Hadley v. Chrysler Group LLC*,
   No. 13-13665, 2014 WL 988962 (E.D. Mich. Mar. 13, 2014), *aff'd*, 624 Fed.
   Appx. 374 (6th Cir. 2015)....................................................................................................7, 9

*Hamilton v. General Mills, Inc.*,
   2016 WL 6542840 (D. Or. Nov. 2, 2016).............................................................................9, 10

*Harris v. Pfizer Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022).......................................................................................14

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013)........................................................................................................5

*Jovine v. Abbott Labs., Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011) ........................................................................... *passim*

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ................................................................................................7

*Kury v. Abbott Labs., Inc.*,
   No. CIV.A. 11-803 FLW, 2012 WL 124026 (D.N.J. Jan. 17, 2012)...................................6, 11

*Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*,
   2016 WL 3088267 (E.D. Ky., May 31, 2016) ..........................................................................24

*Llado-Carreno v. Guidant Corp.*,
   No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) ............................................16

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) .................................................................................................17

*New World Solutions, Inc. v. NameMedia Inc.*,
   150 F. Supp. 3d 287 (S.D.N.Y. 2015).......................................................................................12

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)............................................................................................9

*Olson v. Major League Baseball*,
29 F.4th 59 (2d Cir. 2022) ...............................................................................................5

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)...........................................................................................12

*Padilla v. Porsche Cars North America, Inc.*,
391 F.Supp.3d 1108 (S.D. Fla. 2019) ...........................................................................21

*Parker v. Raymond Corp.*,
930 N.Y.S.2d 27 (N.Y. App. Div. 2011) .......................................................................19

*Pilgrim v. Universal Health Card, LLC*,
660 F.3d 943 (6th Cir. 2011) .........................................................................................24

*Reynolds v. Lifewatch, Inc.*,
136 F. Supp. 3d 503 (S.D.N.Y. 2015).............................................................................23

*Sclar v. OsteoMed, L.P.*,
2018 WL 559137 (S.D. Fla. Jan. 24, 2018) ..................................................................20

*Segovia v. Vitamin Shoppe, Inc.*,
No. 14-CV-7061 (NSR), 2016 WL 8650462 (S.D.N.Y. Feb. 5, 2016) ..................................21

*Sharp v. FCA US LLC*,
2022 WL 14721245 (E.D. Mich. Oct. 25, 2022) ........................................................7, 8

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016)............................................................................14

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................................8

*Sribnyj v. City of New York*,
No. 85 CIV. 2770, 1990 WL 83477 (S.D.N.Y. June 13, 1990)......................................25

*Stanley v. Wal Mart Stores, Inc.*,
839 F. Supp. 430 (N.D. Tex. 1993) ...............................................................................11

*Stoltz v. Fage Dairy Processing Ind., S.A.*,
14-CV-3826, 2015 WL 5579872 (E.D.N.Y. 2015) .......................................................15

*Stutman v. Chem. Bank*,
731 N.E.2d 608 (N.Y. 2000).........................................................................................12

*Tershakovec v. Ford Motor Co.*,
  2018 WL 3405245 (S.D. Fla. July 12, 2018) ........................................................... 21

*United States ex rel. Tessler v. City of New York*,
  No. 14-CV-6455 (JMF), 2016 WL 7335654 (S.D.N.Y. Dec. 16, 2016), *aff'd*,
  712 Fed. Appx. 27 (2d Cir. 2017) ........................................................................... 12

*Thiedemann v. Mercedes-Benz USA, LLC*,
  872 A.2d 783 (N.J. 2005) ....................................................................................... 11

*Toca v. Tutco, LLC*,
  430 F. Supp. 3d 1313 (S.D. Fla. 2020) ................................................................... 18

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .............................................................................................. 9

*Vavak v. Abbott Labs.*, Inc.,
  No. SACV 10-1995 JVS RZX, 2011 WL 10550065 (C.D. Cal. June 17, 2011) ....... 6

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ..................................................................................... 8

*Wheeler v. Topps Co., Inc.*,
  No. 22 CIV 2264 (LGS), 2023 WL 405015 (S.D.N.Y. Jan. 25, 2023) ................... 13

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
  681 F.3d 1208 (10th Cir. 2012) ........................................................................... 7, 8

**Statutes**

Fla. Stat. § 672.313 ....................................................................................... 18, 19

Fla. Stat. § 672.607 ............................................................................................. 21

Fla. Stat. § 672.607(3)(a) ..................................................................................... 20

N.Y. Gen. Bus. Law § 349 ............................................................................ *passim*

N.Y. Gen. Bus. Law § 350 ............................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................... 5, 16, 17

Fed. R. Civ. P. 12(b)(1) ................................................................................. 4, 8, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 5

Fed. R. Civ. P. 12(f) .............................................................................................. 23

Fed. R. Civ. P. 23 ........................................................................................................23

Fed. R. Evid. 201(b) ......................................................................................................6

Fed. R. Evid. 201(b)(2) ..................................................................................................6

## MEMORANDUM OF LAW

**I.      INTRODUCTION**

This action arises from The Laundress's ("Defendant") discovery that certain household consumer products it manufactured were at risk of containing the bacterium *Pseudomonas aeruginosa*. *See* Amended Complaint, Docket Entry 27 (the "AC"). Upon discovering the issue, Defendant issued a public Safety Notice, advising purchasers to stop using the products at issue and offering a full refund to anyone who had purchased one of the products. Shortly thereafter, in conjunction with the Consumer Product Safety Commission ("CPSC"), Defendant recalled the products identified therein, offering a full refund to all consumers who purchased such products.[1] Rather than choosing to take advantage of this standing offer, Plaintiffs Meaghan Skillman, a Florida resident, and Sandra Forbus, an Alabama resident, who allegedly purchased Defendant's products—filed this putative class action lawsuit seeking to recover the very same refund through the judicial process. Courts routinely dismiss complaints under these circumstances both as a matter of law and sound public policy.

The only injury plaintiffs allegedly suffered is the loss of their purchase price, which Defendant has already made available to them. Plaintiffs do not allege that they suffered any personal injury or property damage from exposure to Defendant's products. In fact, Plaintiffs do not allege that they ever used any of Defendant's products, only that they purchased them at some point before or after Defendant issued the Safety Notice. Because Defendant has tendered a full remedy for the only injury Plaintiffs claim they suffered, Plaintiffs' claims are moot. Moreover, Plaintiffs' claims fail as a matter of law given that Plaintiffs cannot allege any actual damages.

---

[1] *See* Consumer Product Safety Commission, *https://www.cpsc.gov/Recalls/2023/The-Laundress-Recalls-Laundry-Detergent-and-Household-Cleaning-Products-Due-to-Risk-of-Exposure-to-Bacteria* (last visited Feb. 22, 2023).

Plaintiffs assert six causes of action based on Defendant's alleged failure to disclose the risk of potential contamination—a risk Plaintiff does not allege Defendant even knew of before it issued the Safety Notice. These include claims under New York General Business Law ("GBL") §§ 349 and 350 (First and Second Causes of Action), a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Third Cause of Action),[2] breach of express warranty under Florida law (Fourth Cause of Action), breach of implied warranty of merchantability under Florida law (Fifth Cause of Action), and a purported claim for breach of express warranty under fifty separate state consumer protection statutes (Sixth Cause of Action). Plaintiffs purport to bring their Sixth Cause of Action on behalf of a nationwide class, their First and Second Causes of Action on behalf of a New York sub-class, and their Third, Fourth, and Fifth Causes of Action on behalf of a Florida sub-class. Plaintiffs seek monetary and injunctive relief, and punitive damages.

Plaintiffs' claims fail as a matter of law for numerous independent reasons. Plaintiffs lack statutory standing to pursue claims under the GBL §§ 349 and 350 because neither alleges that they purchased the products at issue in New York. Moreover, Plaintiffs fail to plead the existence of an actionable omission because Plaintiffs do not allege that Defendant knew of the risk of potential contamination before it issued the Safety Notice and CPSC recall. Plaintiffs also fail to plead proximate causation because they fail to allege they ever reviewed the packaging on the products or any other marketing material before making their purchasing decision.

Plaintiff Skillman's claim under FDUTPA fails because she does not—and cannot—allege that Defendant's failure to disclose the risk of potential contamination was a deceptive practice given that she does not allege Defendant even knew of the risk of contamination prior to learning of the potential problem and promptly issuing the Safety Notice and CPSC recall.

---

[2] Plaintiffs refer to this cause of action as a claim under the "Florida Unfair and Deceptive Trade Practices Act ('FUDTPA')", but this appears to be a typographical error. *See* AC ¶¶ 92.

Plaintiffs' warranty claims also fail as a matter of law. As to their express warranty claim under Florida law, Plaintiffs do not sufficiently allege (1) that Defendant made any express warranty; (2) that Defendant breached any express warranty; (3) proximate causation; or (4) that Plaintiffs provided notice to Defendant of the alleged breach before filing this lawsuit. In fact, Plaintiffs concede that they did not comply with Florida's mandatory pre-suit notice requirement, which is fatal to both their express and implied warranty claims. Their implied warranty claim is also deficient because Plaintiffs fail to show that they were in privity with Defendant.

Plaintiffs' purported cause of action under 50 separate state express warranty laws fails as a matter of law because plaintiffs, as residents of Florida and Alabama, are permitted to allege a breach of express warranty only under the laws of Florida and Alabama respectively. For similar reasons, the Court should strike Plaintiffs' nationwide class allegations because variations in state law would make it impossible to certify a nationwide class seeking to prosecute claims under fifty separate state warranty laws. Finally, Plaintiffs cannot support a demand for injunctive relief or punitive damages (or maintain claims based on such demands) because they have not alleged any risk of future harm and because they fail to plead the requisite factual basis for punitive damages.

## II.   FACTUAL BACKGROUND

This AC arises out of Defendant's voluntary recall of certain products due to the potential presence of a bacterium. *See* AC ¶ 8, n.5.[3] In connection with the voluntary recall, overseen by the CPSC, Defendant has made a standing offer to all consumers to refund the amounts paid for the recalled products, regardless of whether the products they purchased were in fact contaminated. *See Id.* Plaintiffs claim they purchased certain products subject to the CPSC recall (the

---

[3]   In Footnote 5 of the AC, Plaintiffs cite to Defendant's Safety Notice at the following link: https://www.thelaundress.com/pages/safety-notice

"Products").[4] *See Id.* ¶¶ 53, 54. Plaintiffs do not provide any information related to their alleged purchases. For instance, Plaintiff Forbus does not identify which Products she allegedly bought and neither Plaintiff provides any information related to (1) when they made the alleged purchases, including whether they made their purchases before or after Defendant issued the Safety Notice and CPSC recall; (2) the state in which they made the alleged purchases; (3) the retailer from whom they made the alleged purchases, or (4) what information (if any) they reviewed and/or relied upon in making their purchasing decisions. And although Plaintiffs make passing references to "misrepresentations" (*See, e.g.*, AC ¶¶ 15, 37, 43), they do not identify a single misrepresentation purportedly made by Defendant. Instead, Plaintiffs appear to base their claims on their assertion that Defendant failed to disclose the risk of contamination—a risk that Defendant did disclose in the Safety Notice and CPSC recall once that risk was discovered. *See* AC ¶ 8 n.5.

The only injury Plaintiffs claim to have suffered is the loss of the purchase price they paid for the Products—an injury that Defendant has offered to cure through a full refund to all consumers, including Plaintiffs. Although Plaintiffs repeatedly cite to the Safety Notice throughout the AC (*see, e.g.*, AC ¶¶ 8, 31, 53 n.5, n.14), Plaintiffs neglect to mention Defendant's CSPC recall and standing offer of a full refund. Plaintiffs do not claim to have suffered any personal injury as a result of exposure to Defendant's Products.

## III.   LEGAL STANDARDS

A court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A suit brought by a plaintiff without Article III standing is not a "case or controversy,"

---

[4] Plaintiffs use the term "Products" to refer to numerous products subject to Defendant's Safety Notice and recall. *See* AC ¶ 1, n.1. However, for purposes of this Motion, "Products" are defined only as the products the named Plaintiffs allegedly purchased and which form the basis of Plaintiffs' claims. *See* AC ¶¶ 53, 54.

and a district court lacks subject matter jurisdiction over the suit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 212–13 (2000).

A court may also dismiss a complaint where a plaintiff "fail[s] to state a clam upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[a] complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Claims sounding in fraud must satisfy the heightened pleading standards of Rule 9(b)." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). Additionally, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22-CV-02716-CM, 2022 WL 14061542, at *2 (S.D.N.Y. Oct. 24, 2022).

## IV.    ARGUMENT

### A.    The Court may Consider Defendant's Safety Notice and the CPSC Recall.

As an initial matter, in deciding a motion to dismiss, the court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The court also may consider any document "where the complaint relies heavily

upon its terms and effect, thereby rendering the document 'integral' to the complaint." *Id.* Additionally, the Court may judicially notice a fact "that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed." Fed. R. Evid. 201(b); *see also Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (court may take judicial notice of a party's website in deciding a 12(b)(6) motion).

Plaintiffs rely on Defendant's Safety Notice throughout their claims; they quote it and even include a URL link to it in the AC. *See* AC ¶¶ 8, 31, n.5, n.14. The Safety Notice therefore is integral to Plaintiffs' AC and they have incorporated it by reference such that the Court may properly consider the it in ruling on this Motion. *See DiFolco*, 622 F.3d at 111. Additionally, this Court may take judicial notice of the CPSC recall because it "can be accurately and readily determined from" the CPSC's own website—a source "whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2); *Doron Precision Sys.*, 423 F. Supp. 2d at 179 n.8.

## B.    Plaintiffs' Claims Are Moot.

Defendant's voluntary recall program renders Plaintiffs' claims moot. Courts routinely dismiss claims for purchase-price damages where, as here, the defendant has instituted a recall and offered a full refund of the purchase price. *See e.g. Kury v. Abbott Labs., Inc.*, No. CIV.A. 11-803 FLW, 2012 WL 124026, at *5 n.2 (D.N.J. Jan. 17, 2012) (holding that plaintiff's claims relating to the lost value of the products at issue should be dismissed on mootness grounds, and noting that "the mere tender of relief moots her claim for the purchase price of the Similac products" and collecting cases); *Vavak v. Abbott Labs.*, Inc., No. SACV 10-1995 JVS RZX, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) (dismissing claim for restitution as moot where manufacturer had offered to refund purchase price and noting, "[w]hen a defendant offers to make plaintiffs whole, that tender ends any dispute over restitution, and the plaintiffs cannot revive it by simply refusing

the tender."); *cf. Hadley*, 2014 WL 988962, at *6 (dismissing as moot plaintiff's claims relating to defective vehicles in light of defendant's offer to repair the defective parts at issue at no cost).

As discussed above, Defendant has instituted a voluntary recall and offered to provide a full refund to anyone who purchased the products at issue, regardless of whether the product purchased actually contains *Pseudomonas aeruginosa*.[5]   Thus, Plaintiffs' claims—which are designed to recover the very refund Defendant has offered to provide—are moot.

### C.    Plaintiffs' Claims Are Prudentially Moot.

The prudential mootness doctrine permits courts to dismiss a case where "the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 544 (E.D.N.Y. 2017).  Describing the prudential mootness doctrine, then Judge Gorsuch stated:

> After all, if events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal. When it does, we will hold the case "prudentially moot." Even though a flicker of life may be left in it, even though it may still qualify as an Article III "case or controversy," a case can reach the point where prolonging the litigation any longer would itself be inequitable.

*Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (Gorsuch, J.); *see also Sharp v. FCA US LLC*, 2022 WL 14721245, at *6 (E.D. Mich. Oct. 25, 2022) (noting that prudential mootness often occurs in cases in which "a coordinate branch of government steps in to promise the relief [the plaintiff] seeks."). In *Winzler*, the Tenth Circuit applied the prudential mootness doctrine in a frequently cited and factually similar case. 681 F.3d at 1210. There, the plaintiff asserted claims on behalf of a putative class against a car manufacturer based on alleged defects with certain vehicles. *Id.* The plaintiff sought an injunction requiring defendant to notify consumers of the defects and to create a fund for repairs. *Id.* at 1209. After the plaintiff filed the

---

[5] https://www.thelaundressrecall.com/

lawsuit the manufacturer instituted a recall process, pursuant to which it agreed to remedy the issues the plaintiffs complained of. *Id*. at 1211. The Tenth Circuit concluded that in light of the manufacturer's recall "there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits" and concluded the case should be dismissed as prudentially moot. *See Id.* at 1211, 1215. Just as in *Winzler*, Defendant here instituted a voluntary recall overseen by the CPSC and has offered to provide a full remedy for Plaintiff's alleged injury. Thus, "prolonging th[is] litigation any longer would itself be inequitable" and the Court should dismiss this case as prudentially moot. *Id.* at 1210.   The CPSC's active role in overseeing the recall "bear[s] special gravity" because "affording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes [. . .] and the duplicative expenditure of finite public resources." *Sharp*, 2022 WL 14721245, at *6.

### D.   Plaintiffs Lack Standing Because They Have Not Alleged An Injury In Fact.

This Court should dismiss the AC under Rule 12(b)(1) because Plaintiffs fail to allege facts showing that they suffered an "injury in fact" and thus fail to show that they have standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish constitutional standing, a plaintiff must show among other things that she has  suffered an injury in fact. *Id.*. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way,'" which means the "plaintiff must have personally suffered an injury." *Id.*; *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008). To satisfy the "concreteness" element, an injury "must actually exist" and must be "'real' and not 'abstract.'" *Spokeo*, 578 U.S. 330 at 340.

The only injury Plaintiffs claim to have suffered is the loss of the purchase price they paid for certain Products that they now claim are worthless. *See, e.g.*, AC ¶¶ 16, 54. Plaintiffs neglect to mention, however, that Defendant has made a standing offer to provide a full refund to all consumers. The very Safety Notice from which Plaintiffs selectively quote and upon which they rely to support their claims provides instructions for how consumers like Plaintiffs can obtain "a full refund of the purchase price." *See* AC ¶ 8, n.5. Plaintiffs do not allege that Defendant's refund offer is inadequate or fails to fully remedy their alleged injury. Because Defendant has offered to provide a full remedy for the only injury Plaintiffs allegedly suffered, Plaintiffs lack standing to assert their claims. *See Hadley v. Chrysler Group LLC*, No. 13-13665, 2014 WL 988962, at *7 (E.D. Mich. Mar. 13, 2014), *aff'd*, 624 Fed. Appx. 374 (6th Cir. 2015) (dismissing plaintiff's claims for lack of standing and mootness because defendant had offered to provide a full refund of plaintiff's alleged economic losses); *Hamilton v. General Mills, Inc.*, 2016 WL 6542840, at *1-2 (D. Or. Nov. 2, 2016) (plaintiff lacked standing because the "only alleged injury is the economic loss of $15.98, an alleged injury that has been dispelled through defendant's voluntary recall program"). Therefore, this Court should dismiss the AC under Rule 12(b)(1) for lack of standing.

### E.    Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs lack standing to seek injunctive relief because they do not plausibly allege any threat of future harm. To establish Article III standing to seek injunctive relief, plaintiffs must plead a "risk of future harm [that] is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983). "Past injuries," however, "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id;*

*see also Berni v. Barilla S.p.A.*, 964 F.3d 141, 147–48 (2d Cir. 2020) (concluding that injunctive relief was not appropriate for consumers who alleged only past injuries from mislabeled product).

Here, Plaintiffs lack standing to seek an injunction generally prohibiting Defendant from engaging in unfair or deceptive acts. *See* AC ¶¶ 71, 103, 106. Plaintiffs complain only of past harm, alleging that they suffered economic losses as a result of Defendant's alleged failure to disclose a contamination risk. *See, e.g.*, AC ¶¶ 16, 54. Not only do Plaintiffs not allege any risk of future harm, but the AC also makes clear that Defendant has taken decisive action to ensure consumers are made whole. Courts have dismissed with prejudice requests for injunctive relief on similar facts, concluding that they fail to plausibly allege a likely or imminent threat of harm where the only misconduct alleged is an isolated incident. *See, e.g.*, *Hamilton*, 2016 WL 4060310, at *5 (defendant's compliance with FDA during recall weighed against standing for injunctive relief).

### F. Plaintiffs' Request for Medical Monitoring Protocol Fails.

Plaintiffs' request for a blood testing program and medical monitoring protocol (AC at Prayer ¶ (b)) is foreclosed under binding New York law. *See Caronia v. Philip Morris USA, Inc.* 22 N.Y.3d 439, 446–48 (N.Y. 2013) ("*Caronia II*") (no claim for medical monitoring absent physical injury or damage to property); *see also Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 501 (2d Cir. 2020) (confirming New York law does not recognize medical monitoring independent of the presence of a claim for personal injury or property damage). Here, Plaintiffs do not allege a claim for personal injury or property damage, and thus their request for medical monitoring relief fails. *See Caronia II*, 22 N.Y.3d at 446–48; *Benoit*, 959 F.3d at 501.

### G. Plaintiffs Fail to Allege that They Suffered any Damages.

This Court should dismiss each of Plaintiffs' claims because they fail to plausibly allege that they suffered damages. Plaintiffs claim to have suffered the loss of their purchase price for Products they now contend are "worthless." *See* AC ¶ 54. But Defendant has offered to provide a

full refund of Plaintiffs' purchase price, thereby providing exactly the compensation Plaintiffs seek. As other courts have concluded, a plaintiff "cannot plausibly allege that he suffered damages insofar as the amount he paid for the [products at issue], for he alleges that Defendant[] issued a voluntary recall." *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1344 (S.D. Fla. 2011).

The decision in *Jovine* is instructive. There, the plaintiff sued a manufacturer alleging that he had purchased contaminated infant formula, which the manufacturer later recalled. *Id.* at 1335. The plaintiff alleged that he would not have purchased the formula if he had known of the risks of potential contamination. *Id.* at 1344; AC ¶ 54, 99. The Court dismissed the plaintiff's FDUTPA claim, finding that the plaintiff had failed to allege damages in light of the manufacturer's offer to provide him a full refund through Abbott's recall process. *Id.*

Numerous other courts have similarly dismissed claims alleging purchase-price damages where a defendant offered to refund the purchase price. *See, e.g.*, *Kury v. Abbott Labs.*, Inc., 2012 WL 124026, at *5 n.2 (D.N.J. Jan. 17, 2012); *Bland v. Abbott Labs., Inc.*, 2012 WL 32577, at *2 (W.D. Ky. Jan. 6, 2012); *Stanley v. Wal Mart Stores, Inc.*, 839 F. Supp. 430, 434 (N.D. Tex. 1993); *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 789, 794 (N.J. 2005). Dismissal is proper because Plaintiffs cannot plausibly allege that they suffered any actual damages in light of Defendant's standing offer to provide a refund.

### H.   Plaintiffs Fail to Allege An Actionable Misrepresentation.

Although Plaintiffs appear to primarily assert an omission-based theory of liability (*i.e.* that Defendant failed to disclose the risk of possible bacteria contamination), Plaintiffs loosely reference "misrepresentations" throughout the AC. *See, e.g.*, AC ¶¶ 15, 37, 43, 48. But Plaintiffs do not identify a single affirmative misrepresentation or even a single advertisement or publication in which Defendant made an alleged misrepresentation. Plaintiffs vaguely allege that Defendant "misrepresent[ed] the cleaning products as safe," but they allege no facts to support this

conclusion. AC ¶ 98. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Plaintiffs fail to specify when and where they encountered the alleged misrepresentations or how they were deceived. *Cf. United States ex rel. Tessler v. City of New York*, No. 14-CV-6455 (JMF), 2016 WL 7335654, at *3 (S.D.N.Y. Dec. 16, 2016) (Furman J.), *aff'd*, 712 Fed. Appx. 27 (2d Cir. 2017) (complaint sounding in fraud must "provide the 'who, what, when, where and how'" of the alleged fraudulent conduct); *Forsher v. J.M. Smucker Co.*, No. 5:19CV00194, 2020 WL 1531160, at *2 (N.D. Ohio Mar. 31, 2020) ("[G]eneralities do not satisfy the pleading standard for fraud"). Thus, the Court should dismiss Plaintiffs' claims to the extent they are premised on an alleged misrepresentation.

## I.  Plaintiff's GBL §§ 349 and 350 Claims Should Be Dismissed.

To assert a claim under GBL §§ 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). "[A] [D]eceptive acts or practices . . . are 'limited to those likely to mislead a reasonable consumer acting under the circumstances.'" *New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 329–30 (S.D.N.Y. 2015). Additionally, a plaintiff seeking relief under § 350 must allege that she relied on the alleged misstatements or omissions at the time of her purchase. *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 304–05 (N.D.N.Y. 2019) (citing *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 781 N.Y.S.2d 45, 47 (2d Dept. 2004)). Although a plaintiff asserting a claim under GBL § 349 need not allege reliance, she still "must show that the materially deceptive act caused the injury." *Id.* at 304 (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608 at 608 (N.Y. 2000)).

### 1.  Plaintiffs Lack Statutory Standing Under GBL §§ 349 or 350.

Plaintiffs lack statutory standing to bring claims under §§ 349 and 350 unless they show that the "transaction in which [they were] deceived . . . occur[red] in New York." *See Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324-25 (N.Y. Ct. App. 2002) (noting that § 349 reveals an intent "to protect consumers in their transactions that take place in New York State. It was not intended to police the out-of-state transactions of New York companies. . . .").

To determine whether a plaintiff has satisfied her burden of establishing the territorial requirement under §§ 349 and 350, the court must "focus on the location of transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction. . . ." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013). Plaintiffs bear the burden of alleging facts sufficient to demonstrate New York's connection to the allegedly deceptive transaction. *See*, *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2021 WL 2941820, at *3-5 (S.D.N.Y. July 12, 2021) (dismissing claim under § 349 because plaintiff failed to sufficiently allege facts to establish the territorial requirement). The mere fact that a defendant is a New York citizen is insufficient to satisfy the territoriality requirement. *See, e.g.*, *Id.*; *In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *13 (S.D.N.Y. Aug. 4, 2021) (concluding that "it is irrelevant to this analysis that . . . [the defendant] is a New York corporation.").

Here, Plaintiffs fail to meet their burden of alleging facts sufficient to satisfy the territoriality requirement of §§ 349 and 350. Plaintiff Skillman is a Florida resident and Plaintiff Forbus is an Alabama resident. *See* AC ¶¶ 53, 54. Because Plaintiffs do not allege they purchased the Products in New York, they lack statutory standing to bring claims under §§ 349 and 350. Moreover, because Plaintiffs lack standing to bring GBL §§ 349 and 350 claims in their own right, they cannot bring those claims on behalf of a putative class either. *See Wheeler v. Topps Co., Inc.*, No. 22 CIV. 2264 (LGS), 2023 WL 405015, at *2 (S.D.N.Y. Jan. 25, 2023) (dismissing §§ 349

and 350 claims for named plaintiff's lack of statutory standing and named plaintiff could not assert §§ 349 and 350 claims on behalf of putative class because she lacked "standing in her own right.").

**2.      Plaintiffs' §§ 349 and 350 Claims Fail Because Plaintiffs Fail to Allege Defendant's Knowledge.**

Plaintiffs' omission-based claims under GBL §§ 349 and 350 must be dismissed because Plaintiffs fail to allege that Defendant knew of the risk of potential contamination before the events leading up to issuing the Safety Notice. Under GBL §§ 349 or 350, Plaintiffs must allege (1) the defendant alone possessed the omitted information, (2) the omitted information is relevant to the consumer, and (3) the defendant failed to provide the omitted information to the consumer. *See Fishon*, 2022 WL 3284670, at *16; *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016). "The key, of course, is that the defendant 'possess' the information that the plaintiff claims it improperly withheld." *Id.,* at 359. "Thus, plaintiffs pursuing an omission-based claim must 'plausibly allege that the defendants had knowledge of the material information and failed to disclose or actively concealed such information" *Id.*

Here, Plaintiffs fail to allege the "key" element of an omission-based claim: namely that Defendant "possess[ed] the information that the plaintiff claims it improperly withheld." *Id.* Plaintiffs allege only that Defendant issued a Safety Notice upon learning of the risk of contamination. *See* AC ¶ 8. But Plaintiffs do not allege that Defendant knew of the risk of contamination at the time Plaintiffs allegedly purchased the Products. Accordingly, Plaintiffs cannot state a claim under GBL § 349 and 350. *See Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 242 (S.D.N.Y. 2022) (dismissing omission-based claim against product manufacturer following a voluntary recall because plaintiff failed to "plausibly allege that [defendant] knew about the [chemical] contamination before it issued its recall" or at the time plaintiff purchased the product).

**3.      Plaintiffs Fail to Allege Proximate Causation.**

Plaintiffs cannot show that Defendant's alleged omission caused them any injury because Plaintiffs do not allege that they ever reviewed the Products' labels or packaging, which is where Plaintiffs claim Defendant should have disclosed the risk. For a misrepresentation or omission to have caused a plaintiff's injury, the plaintiff "must have alleged facts plausibly suggesting that she actually saw or heard any of these statements before she purchased the [the products at issue]." *See Cummings*, 401 F. Supp. 3d at 305–06; *see also Gale*, 781 N.Y.S.2d at 47 (affirming dismissal of GBL § 349 claim because plaintiff did not allege that he saw statements at issue before purchasing the product, and thus could not allege causation); *Stoltz v. Fage Dairy Processing Ind., S.A.*, 14-CV-3826, 2015 WL 5579872, at *22 (E.D.N.Y. 2015) ("[T]o properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products purchased.").

Here, Plaintiffs claim that Defendant's failure to disclose the risk of contamination on the products' packaging and ingredients list caused their injuries. *See e.g.*, AC ¶¶ 2, 12, 13. However, Plaintiffs never allege that they read the packaging or ingredients list on Defendant's products before purchasing them. Nor do Plaintiffs allege they reviewed any other advertisement or statement Defendant allegedly published concerning the products at issue prior to making their purchasing decisions. Thus, Plaintiffs cannot plead that any injuries allegedly suffered were caused by Defendant's failure to make a particular disclosure on the Product's packaging. *See Cummings*, 401 F. Supp. 3d at 305–06; *Gale*, 781 N.Y.S.2d at 47; *Stoltz*, 2015 WL 5579872, at *22.

### 4.     Plaintiffs Fail to Allege Damages.

Plaintiffs' claims under §§ 349 and 350 fail for the additional reason that Plaintiffs fail to allege that they suffered actual damages. As discussed in Subsection G, the only damages Plaintiffs claim to have suffered are economic losses stemming from their purchase of products that they claim proved to be worthless and for which Defendant has offered a full refund. *See Davis v. Avvo,*

15

*Inc.*, 345 F. Supp. 3d 534, 544 (S.D.N.Y. 2018) (dismissing GBL § 349 claim because plaintiff failed to allege damages).

> **5.      Plaintiffs' Claim Under GBL § 350 Must be Dismissed Because Plaintiffs Fail to Allege Reliance.**

To state a claim under GBL § 350, a plaintiff must allege that she relied on the alleged misstatements or omissions at the time of her purchase. *Cummings*, 401 F. Supp. 3d at 304–05. As noted above, Plaintiffs do not allege any facts suggesting that they reviewed the packaging associated with Defendant's products. Thus, Plaintiffs cannot plausibly claim they relied on any information Defendant allegedly omitted from the packaging or labels. *See Gale*, 781 N.Y.S.2d at 47 (2d Dept. 2004) ("[d]ismissal of the plaintiff's claims under General Business Law § 350 . . . which do require proof of reliance, was also proper, since the plaintiff failed to allege that he relied on the statements or any advertisement at the time of his purchase.").

> **J.      Plaintiffs Fail to State a Claim Under FDUTPA.**

Plaintiffs fail to plausibly allege any element of a FDUTPA claim. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *25 (S.D.N.Y. July 15, 2016) (Furman, J) (identifying elements of FDUTPA claim as "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.")

> **1.      Plaintiffs' FDUTPA Claim is Subject to Rule 9(b).**

This Court and numerous Florida district courts have found that FDUTPA claims that sound in fraud are subject to Rule 9(b)'s heightened pleading standard. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *25 (S.D.N.Y. July 15, 2016) (Furman, J.) (holding that because plaintiff's "FDUTPA claim sounds in fraud . . ., she must meet the heightened pleading standards of Rule 9(b)"); *Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011). Here, Plaintiffs' FDUTPA claim

16

sounds in fraud and therefore is subject to Rule 9(b)'s heightened pleading standard. *See* AC ¶¶ 96–97 (alleging that Defendant violated FDUTPA by "intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts" and engaging in "unfair or deceptive acts or practices").

### 2.      Plaintiffs Fail to Allege an Unfair or Deceptive Act.

Plaintiffs fail to allege that Defendant engaged in an unfair or deceptive act with the specificity required under Rule 9(b). In *In re: General Motors LLC Ignition Switch Litigation*, this Court considered a FDUTPA claim and recognized that while an omission can amount to an "unfair or deceptive act," the plaintiff must allege facts showing the defendant had "knowledge of a potential defect that was not disclosed" in order to satisfy Rule 9(b)'s heightened pleading standard. *Id.* *25–26. 2016 WL 3920353 (S.D.N.Y. July 15, 2016). Once Defendant learned of the potential contamination, it promptly issued the Safety Notice and CPSC recall. Plaintiffs therefore cannot plausibly allege that Defendant had knowledge it failed to disclose.

### 3.      Plaintiffs Fail to Allege Actual Damages.

A plaintiff asserting a FDUTPA claim must plead actual damages. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021). As discussed in Subsection G, Plaintiffs fail to allege that they suffered "actual damages" for purposes of their FDUTPA claim, requiring dismissal. *See Jovine*, 795 F. Supp. 2d at 1344 (dismissing FDUTPA claim based on failure to allege damages in light of defendant's recall).

### K.      Plaintiff's Express Warranty Claims Fail as a Matter of Law.

"To plead a cause of action for breach of express warranties under the Florida Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer

as a result of the breach of the express warranty." *Jovine*, 795 F. Supp. 2d at 1339–40. Other than

the sale of goods, Plaintiffs fail to sufficiently plead any of these elements.

### 1.    Defendant Did not Make any Express Warranties.

"[T]o state a claim for breach of an express warranty [under Florida law], the plaintiff must

first identify the express warranty that the defendant allegedly breached." *Toca v. Tutco, LLC*, 430

F. Supp. 3d 1313, 1324 (S.D. Fla. 2020). Florida law recognizes only three categories of actionable

express warranties:

> (a)    Any affirmation of fact or promise made by the seller to the buyer which
> relates to the goods and becomes part of the basis of the bargain creates an
> express warranty that the goods shall conform to the affirmation or promise.
>
> (b)    Any description of the goods which is made part of the basis of the bargain
> creates an express warranty that the goods shall conform to the description.
>
> (c)    Any sample or model which is made part of the basis of the bargain creates
> an express warranty that the whole of the goods shall conform to the sample
> or model.

Fla. Stat. § 672.313.

Here, Plaintiff does not allege Defendant made or provided *any* (a) affirmation or promise,

(b) description of goods, or (c) sample or model, let alone one that could create an actionable

express warranty. As discussed in Subsection G, Plaintiffs do not plausibly allege that Defendant

made any affirmative misrepresentations or that Defendant made any specific warranty with

respect to any specific product. For that reason, their breach of express warranty claim fails as a

matter of law. *See Toca*, 430 F. Supp. 3d at 1324 (dismissing breach of express warranty claim

where plaintiff failed to sufficiently allege defendant made express warranty).

To the extent Plaintiffs allege that Defendant's "ingredient list" (which differs from

product to product) is somehow an express warranty that the Products are devoid of unintended

contaminants, that theory is not viable.  *Cf. Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL

2990766, at *3 (N.D. Cal. July 20, 2012) ("Numerous courts have also held that product descriptions do not constitute warranties against a product defect."). Plaintiffs do not allege what is actually stated in the "ingredient lists"—a fact that it fatal to their express warranty claim. *See Parker v. Raymond Corp.*, 930 N.Y.S.2d 27, 29 (N.Y. App. Div. 2011) (affirming dismissal of breach of express warranty claim "since the plaintiff failed to set forth the terms of the warranty upon which he relied."). Rather, they allege only that "Defendant specifically lists both the active and inactive ingredients of the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Pseudomonas aeruginosa*." *See* AC ¶ 4. Plaintiffs' attempt to conflate the Products' ingredients with unintended contaminants should be rejected. Indeed, Plaintiffs do not, and cannot, plausibly allege *Pseudomonas aeruginosa* is an *ingredient* in the Products. Thus, the "ingredient list" is neither an "affirmation of fact or promise" nor is it a "description of the goods, which is made part of the basis of the bargain," and therefore not an actionable warranty under Florida law. *See* Fla. Stat. § 672.313. Nor would such an interpretation of an ingredient list be plausible. *See Axon v. Florida's Nat. Growers, Inc.*, 813 Fed. Appx. 701, 705 (2d Cir. 2020) (explaining that a "contaminant" is distinct from an "intentionally-added ingredient"); *cf. Castillo v. Unilever United States, Inc.*, No. 20 C 6786, 2022 WL 17976163, at *2 (N.D. Ill. Dec. 28, 2022) ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.").

### 2.     Plaintiffs Do Not Allege Breach.

Because Plaintiffs do not (and cannot) plausibly allege that Defendant made an actionable express warranty, it follows that Plaintiffs also fail to plead any breach thereto. To the extent Plaintiffs contend the ingredient list created an express warranty, Plaintiffs fail to plausibly allege that Defendant breached that purported warranty. The AC and the Safety Notice cited therein make

clear that alleged bacterium at issue in this case is not an ingredient in the Products; it is, at most, an unintended potential contaminant, and of course would not be listed among the products' ingredients. *See Axon*, 813 Fed. Appx. at 705.

### 3. Plaintiffs Do Not Allege Knowledge or Proximate Causation.

To state a claim for breach of express warranty under Florida law, Plaintiffs must allege they had knowledge of the actionable warranty at issue and that it caused their alleged injury. *Jovine*, 795 F. Supp. 2d at 1339–40; *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24, 2014 WL 1418100, at *3 (M.D. Fla. Apr. 11, 2014) ("To satisfy the "basis of the bargain" requirement, Plaintiff must prove that she 'read, heard, saw or knew' the statement [that] she alleges constituted a warranty."). Here, because Plaintiffs fail to sufficiently allege that Defendant made an actionable express warranty, they fail to plead that they knew of such warranty at the time they made their purchase or that the alleged breach proximately caused their alleged injury.

To the extent Plaintiffs are proceeding on the theory that the purported ingredient list is an actionable express warranty, they also fail to allege that they read, saw, or knew the ingredient list prior to making her purchasing decision. Likewise, with respect to Plaintiffs' conclusory allegation that Defendant expressly warranted that "the Products are safe for use and do not contain *Pseudomonas aeruginosa*," they do not allege where this purported warranty appears or that they read or saw it at or before the time they purchased the products at issue. Accordingly, Plaintiffs fail to allege proximate causation and thus, this Court should dismiss their express warranty claim.

### 4. Plaintiffs Did Not Provide Notice or Opportunity to Cure.

Plaintiffs' express warranty claim also fails because they did not comply with Florida's mandatory pre-suit notice and opportunity to cure requirement. *See* Fla. Stat. § 672.607(3)(a) ("The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Sclar v. OsteoMed, L.P.*, 2018 WL

559137, at *2 (S.D. Fla. Jan. 24, 2018) (where a complaint "does not allege that Plaintiffs complied with Florida's pre-suit notice requirement, Plaintiffs have failed to state a claim for breach of express warranty."); *see also Jovine*, 795 F.Supp.2d at 1339–40.

Plaintiffs do not allege that they provided pre-suit notice. Nor could they plausibly support such an allegation given that they filed this lawsuit after Defendant had issued the Safety Notice and made a standing offer to cure the very injuries Plaintiffs are complaining of. Accordingly, Florida law mandates dismissal of Plaintiff's express warranty claim. *See Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061 (NSR), 2016 WL 8650462, at *6 (S.D.N.Y. Feb. 5, 2016) (dismissing breach of express warranty claim under Florida law for failure to comply with statutory notice requirement); *see also Jovine*, 795 F.Supp.2d at 1340.

Recognizing this failure, Plaintiffs allege that "any opportunity to cure the breach is unnecessary and futile." AC ¶ 118. Plaintiffs do not attempt to support this hollow conclusion with a single factual assertion and thus the Court need not accept it as true. *Iqbal*, 556 U.S. at 678. In any event, the plain language of § 672.607 permits no exception to the mandatory notice requirement, and courts refuse to read in a "futility" exception. *See Garcia v. Clarins USA, Inc.*, No. 14-CV-21249, 2014 WL 11997812, at *7 (S.D. Fla. Sept. 5, 2014).

### L.   Plaintiffs' Implied Warranty Claim Fails as a Matter of Law.

#### 1.   Plaintiffs Fail to Plead that they were in Privity with Defendant.

Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty of merchantability in the absence of privity. *See Padilla v. Porsche Cars North America, Inc.*, 391 F.Supp.3d 1108, 1115–19 (S.D. Fla. 2019) ("Time and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity."); *Tershakovec v. Ford Motor Co.*, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) ("Florida law requires privity for an implied warranty claim."). To establish privity, the plaintiff must show that

she "purchased the products at issue directly from the defendant." *See Padilla*, 391 F. Supp. 3d at 1116. Here, Plaintiffs fail to allege that they purchased the products at issue directly from Defendant as opposed to from any of the numerous retailers who sell Defendant's products. *See* AC ¶¶ 53, 54. Thus, Plaintiffs cannot state an implied warranty claim against Defendant.

### 2.   Plaintiffs Fail to Plausibly Allege Injury.

Plaintiffs' implied warranty claim fails for the additional reason that they fail to plausibly allege an injury. *See Jovine*, 795 F. Supp. 2d at 1340 (noting that plaintiff must show injury to state a claim for breach of implied warranty claim under Florida law). As discussed in Subsection G, Plaintiffs cannot plausibly allege that they suffered an injury given Defendant's standing offer to provide a full refund. As such, Plaintiffs cannot maintain a claim for breach of implied warranty.

### 3.   Plaintiffs Failed to Provide Notice.

A plaintiff asserting a claim for breach of implied warranty under Florida law must show that she provided pre-suit notice to Defendant. *See Armadillo Distribution Enterprises, Inc. v. Hai Yun Musical Instruments Manufacture Co. Ltd.*, 142 F. Supp. 3d 1245, 1254 (M.D. Fla. 2015). As noted above, Plaintiffs failed to allege that they provided notice and therefore cannot state a claim for breach of implied warranty.

### M.   Plaintiffs' Nationwide Express Warranty Claim is Improper.

Plaintiffs' nationwide claim for breach of express warranty under 50 separate state warranty laws is improper. *See* AC ¶¶ 129–138. Although Plaintiffs express warranty claims should be dismissed (*see* Subsection K above), they are, at best, only able to raise express warranty claims under the law of the states in which they are citizens (here, Florida and Alabama). Their attempt to assert a nationwide class claim under 50 separate state warranty laws is improper. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying law of each plaintiff's "home state" to breach of warranty claims); *see also Chin v.*

*Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998). A federal district court "generally must apply the choice-of-law principles of the state in which it sits." *In re Grand Theft Auto,* 251 F.R.D. at 146. Under New York choice-of-law rules, a court must evaluate breach of warranty claims under the laws of either the plaintiff's home state or the state where the product at issue was purchased. *See In re Grand Theft Auto*, 251 F.R.D. at 149; *see also Chin*, 182 F.R.D. at 457 (applying law of each plaintiff's "home state" to breach of warranty claims); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 347-48 (D.N.J. 1997) (same).

Plaintiffs, residents of Florida and Alabama, do not allege where they purchased the products at issue, but it is reasonable to infer that the purchases occurred in their home states. Thus, Plaintiffs can only assert claims for breach of warranty—if at all—only under the laws of Florida and Alabama. Plaintiffs' attempt to assert warranty claims under 50 state warranty laws is improper and therefore should be dismissed. *See In re Grand Theft Auto*, 251 F.R.D. at 146; *Chin*, 182 F.R.D. at 457; *In re Ford*, 174 F.R.D. at 347-48.

### N.      The Court should Strike the Nationwide Class Allegations as Unmanageable.

The Court should strike Plaintiffs' nationwide class allegations under Rule 12(f) and Rule 23. Plaintiffs seek to certify a nationwide class and allege a single cause of action on behalf of the nationwide class under 50 separate and distinct state warranty statutes. Rue 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter" *sua sponte* or "on motion made by a party." *See* Fed. R. Civ. P. 12(f); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015). Rule 23 "calls for a determination 'whether to certify the action as a class action' at 'an early practicable time after a person sues . . . as a class representative." *See* Fed. R. Civ. P. 23; *Reynolds*, 136 F. Supp. 3d at 511. A court may strike class allegations at the motion to dismiss stage where it is clear from the face of the complaint that it would be impossible to certify the putative class. *Id.*

Here it would be impossible and unmanageable to certify a single nationwide class under 50 separate state warranty laws due to the substantial variations among those laws. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 948 (6th Cir. 2011) (refusing to certify a nationwide class covered by the laws of different states because "the district judge would face an impossible task of instructing a jury on the relevant law . . . [i]f more than a few of the laws of the fifty states differ."); *Elson v. Black*, 56 F.4th 1002, 1007 (5th Cir. 2023) (affirming district court's order striking nationwide class allegations at motion to dismiss stage because "variations in state law here 'swamp any common issues and defeat predominance.'"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these [consumer-protection] claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."). There can be no debate that there are substantial differences among the 50 different express warranty statutes Plaintiffs seek to pursue on behalf of the putative nationwide class. *See* Exhibit 1 (50 State survey). As the survey demonstrates, certain states require a plaintiff to prove reliance to succeed on an express warranty claim while others do not. *Compare Davenport v. Ford Motor Co.*, 2006 WL 2048308, at *3 (N.D. Ga. July 20, 2006) (Georgia law requires reliance); *Leafguard of Kentuckiana, Inc. v. Leafguard of Kentucky, LLC*, 2016 WL 3088267, at *7 (E.D. Ky., May 31, 2016) (Kentucky law requires reliance) *with FastTrac Transp., LLC v. Pedigree Tech., LLC*, 2022 WL 3028048, at *4 (D.N.D. Aug 1, 2022) (North Dakota law does not require reliance). For this reason, many courts have struck nationwide class allegations in cases alleging breach of express warranty claims. *See Pilgrim*, 660 F.3d 943, 948–49; *In re Bridgestone/Firestone*, 288 F.3d at 1018 *Forsher*, 2020 WL 1531160, at *9 (collecting cases from multiple circuits); *Bechtel v. Fitness Equip. Servs.*, No. 339 F.R.D. 462, 480–81 (S.D. Ohio 2021).

**O.      Plaintiffs Have Not Sufficiently Pleaded Entitlement to Punitive Damages.**

This Court should dismiss Plaintiffs' baseless request for punitive damages. "In order to impose punitive damages on corporate defendants . . ., New York law requires that the officers or directors of the company, *i.e.*, the management, 'either authorized, participated in, consented to or,. after discovery, ratified the conduct' giving rise to such damages." *Sribnyj v. City of New York*, No. 85 CIV. 2770, 1990 WL 83477, at *3 (S.D.N.Y. June 13, 1990). Plaintiffs have alleged no facts suggesting that any of Defendant's officers or directors authorized, participated in, consented to or, after discovery, ratified the conduct' leading to damages due to the alleged contamination. To the contrary, upon learning of the alleged contamination, Defendant took decisive action and promptly issued the Safety Notice and CPSC recall and offered full refunds to all affected consumers. Accordingly, Plaintiffs' AC fails to allege any basis for punitive damages.

**V.      CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' AC in its entirety with prejudice.

25

Date: March 1, 2023

Respectfully submitted,

By: */s/ Ronald Y. Rothstein*

Ronald Y. Rothstein (*pro hac vice*)
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
rrothste@winston.com
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Rebecca Loegering (*pro hac vice*)
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
rloegering@winston.com
Telephone: (214) 453-6500
Facsimile: (214) 453-6400 (telecopy)

ATTORNEYS FOR THE LAUNDRESS, LLC